FREEMAN v. HUTTIG SASH & DOOR CO.
et al.†

(Court of Civil Appeals of Texas.   March 11,
1911.   Rehearing Denied March 25, 1911.)

1. PARTNERSHIP (§ 238*) — NEW PARTNERS —
DEBTS—LIABILITY.
    Defendant having purchased an interest in
a going partnership became liable for all its
debts, whether incurred before or after his
purchase, where the firm was solvent at that
time, and until the assets were dissipated he
apparently expected to pay the debts, though an
unsuccessful attempt to incorporate was made.
    [Ed. Note.—For other cases, see Partnership,
Cent. Dig. §§ 491, 492;  Dec. Dig. § 238.*].

2. PARTNERSHIP (§ 31*) — EXISTENCE — EVI-
DENCE.
    Existence of a partnership as affecting the
liability of a member for firm debts can be es-
tablished by acquiescence of the parties, though
no express partnership agreement be shown.
    [Ed. Note.—For other cases, see Partnership,
Cent. Dig. § 35;  Dec. Dig. § 31.*]

3. PARTNERSHIP (§ 30*)—LIABILITY OF MEM-
BERS.
    A partner entitled to share in profits must
bear losses, and is liable for firm debts.
    [Ed. Note.—For other cases, see Partnership,
Cent. Dig. §§ 39–48;  Dec. Dig. § 30.*]

4. APPEAL AND ERROR (§ 1054*) — HARMLESS
ERROR—ADMISSION OF EVIDENCE.
    In a suit to charge defendant with firm
debts, any error in admitting a third person's
statement that defendant was a partner was
harmless, where the case was tried without a
jury and the other evidence established defend-
ant's liability.
    [Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4185, 4186;  Dec. Dig. §
1054.*]

Error from District Court, Dallas County;
E. B. Muse, Judge.

Action by the Huttig Sash & Door Com-
pany against O. F. Freeman and others.
Judgment for plaintiff, and defendant Free-
man brings error.   Affirmed.

Locke & Locke, for plaintiff in error.  Hol-
loway & Holloway, Hill & Webb, Spence &
Baker, Lawther & Worsham, and Chilton &
Chilton, for defendant in error.

RAINEY, C. J.   This is an appeal from a
judgment of the district court of Dallas
county, holding Freeman liable for the debts
of the Independent Lumber Company, a co-
partnership, contracted both before and aft-
er his connection with said company.

The following statement of the nature and
result of the suit is taken from the brief of
defendant in error, Huttig Sash & Door Com-
pany, viz.:  "On November 17, 1908, the Hut-
tig Sash & Door Company filed suit in the
district court of Dallas county against the
Independent Lumber Company, C. B. Yost,
T. H. Campbell, J. T. Sewell, and C. F. Free-
man, alleging that in May, 1908, the Inde-
pendent Lumber Company was a firm com-
posed of C. B. Yost, T. H. Campbell, and J.
T. Sewell, engaged in the retail lumber busi-
ness in Dallas, Tex., and that they bought

of plaintiff merchandise of the value of $1,-
612.21.  That thereafter, in about the month
of August, 1908, the defendant T. H. Camp-
bell, by and with the consent of his copart-
ners, sold his interest in the firm and busi-
ness to C. F. Freeman, who, by and with the
consent of C. B. Yost and J. T. Sewell, was
received into the firm as a partner in the
place of said Campbell, who retired, and by
consent and agreement of all parties Free-
man became a partner, taking the place of
Campbell in the firm and business and all
things else,  *  *  *  it being their desire
and agreement to continue the business un-
interruptedly, the new firm succeeding to
all the rights and assets and assuming all
the debts of the old firm, and especially as-
sumed and agreed to pay plaintiff's debt.
That each and all the parties knew at the
time that the Independent Lumber Company
was indebted to plaintiff in the sum of $1,-
612.21.  That the Independent Lumber Com-
pany, composed of C. B. Yost, J. T. Sewell,
and C. F. Freeman, assumed and agreed and
became liable to pay said debt, and the said
C. F. Freeman, when thus admitted and re-
ceived into the business known as the In-
dependent Lumber Company, agreed to and
did assume all the liabilities of a partner
in the business theretofore conducted and to
be thereafter conducted, and especially
agreed and bound himself as a partner there-
in with said Yost, Sewell, and Campbell;  to
pay the debt owing to plaintiff, and he there-
by became bound equally with all the other
defendants herein to pay the debt then due
and owing to the plaintiff, and he, with the
other defendants, has received the merchan-
dise so delivered by plaintiff, and has sold a
portion thereof, appropriating the proceeds
derived therefrom to the use and benefit of
themselves and the business so conducted
by them under the name of the Independent
Lumber Company.  Plaintiff at this time pre-
sented affidavit and bond for attachment,
and the writ was duly issued and levied up-
on sufficient property to secure plaintiff's
debt.  Thereafter, to wit, December 30, 1908,
upon application made by the Huttig Sash
& Door Company, C. F. Freeman and C. B.
Yost consenting thereto, a receiver was ap-
pointed and took charge of all the assets of
the Independent Lumber Company, includ-
ing the attached property.  The court sub-
sequently ordered all the assets sold, and
the proceeds of the attached property to be
held in lieu of the property itself, to await
the final judgment of the court.  The defend-
ant, C. F. Freeman, filed an answer setting
up that by reason of certain inducements
he had purchased an interest in the business
and says as follows:  'Thereupon on, to wit:
July 29, 1908, this defendant, Freeman, pur-
chased from the defendant Campbell, for
the sum of $400 in cash, all his right, title,
and interest in the Independent Lumber

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error granted by Supreme Court.

Company and its property, appurtenances, and rights of every kind and character, but states that his intention was to form a corporation to take over the business at once, and denies any agreement of partnership with Yost, or Campbell, or Sewell, or any one else, except so far as by his acts he may be held liable as a partner as a matter of law.' There were many interveners, as to some of whom Freeman admitted his liability, and denied as to others. The trial before the court without a jury resulted in plaintiff recovering judgment against all the defendants for its debt, and for a priority in the payment of its claim out of the proceeds of the sale of the attached property which had been held intact in court."

We find that the brief of defendant in error, Huttig Sash & Door Company, contains a correct statement of the material facts proven on the trial, and we here adopt the same, in part, as our conclusions of fact, viz.:

"In March, 1908, C. B. Yost, T. H. Campbell, and J. T. Sewell became partners under the firm name, Independent Lumber Company, engaging in the lumber business in Dallas, Tex.; Yost being manager and having active supervision of the business. Sewell lived in East Texas, and was to buy lumber and sell it to the company; for such lumber as he furnished the company he was to be deemed a creditor. Campbell was to give his service as salesman and advance the money to pay freights on lumber shipped to the company, and as to freights advanced by him he was to be deemed a creditor of the company. Yost put no money in the business, and was to receive a salary for his services. In fact, the firm had no capital, and the parties were equally interested in the firm, and each was to receive one-third of the profits and bear one-third of the losses. The firm, as thus constituted, continued business until about July 29, 1908, and had accumulated a considerable stock of lumber. Campbell's funds had been insufficient to meet the freight bills as they became due, and Yost, with the help of Freeman, had been borrowing money as needed, Freeman indorsing the obligations of the company. About this time Freeman became unwilling to further indorse for Yost and the company as as accommodation, and Campbell being unable to advance any more money, Freeman suggested that Campbell sell out. Then the suggestion was made that Freeman come into the firm by buying Campbell's interest in the business. After investigating the business and receiving statements and reports thereof from Yost, negotiations were opened with Campbell looking to the purchase of his interest in the business by Freeman. The company then owed Campbell $362.50 on account, and Campbell owned a one-third interest in the business, which had assets of $2,000 above all liabilities, including the liabilities to each of the partners; this being the net profits on the four months' business. The deal was consummated July 29, 1908, and Freeman paid Campbell $400, and Campbell, by bill of sale, transferred to Freeman, 'All my (Campbell's) right, title, and interest in the Independent Lumber Company of Dallas, Tex., having its principal office and yards on the corner of Holmes and Parker streets, in the city of Dallas, Tex. This instrument is intended to convey, and does convey, unto the said Freeman an undivided one-third interest, the other two-thirds interest being owned by C. B. Yost and J. T. Sewell, respectively. Said transfer to include all my interest in and to the property, appurtenances, and rights of every kind and connection in said company or firm.' This sale also included Campbell's claim against the company for $362.50. Thereupon Campbell retired from the business.

"At the time Freeman bought into the firm, he knew the terms of the original partnership, the condition of the business, that there were debts owing by the firm, and that these debts were to be paid in the regular course of business after he came in. Yost had already made Freeman a statement, showing the assets and liabilities of the firm. Yost and Sewell each consented to Campbell's sale to Freeman. Indeed, Yost was active in effecting it, and they both agreed to receive Freeman in Campbell's place. All parties desired that the business of the company should continue without interruptions, and no change was made therein. Yost had always been in absolute control of the business and so continued. No notice of any change was given to any one, nor was any change made in the stationery used; they continued to use the same books and all accounts were treated as continuing accounts. No distinction was made between the goods purchased before or after Freeman came in; they were all mingled in the general stock of the company. No distinction was made in accounts for goods sold before or after Freeman came into the firm. All collections made for goods sold, either before or after Freeman came in, were put in the general funds of the company, and out of this general fund all debts, whether created before or after Freeman's advent, were paid as they became due, and this was done by common consent and agreement of all parties; it being their intention and purpose to continue the business just as it had theretofore been run. The only effect of Freeman's entry into the firm and business seems to have been that the firm was given a standing and credit that it had not theretofore enjoyed; and Yost told the various parties with whom the company was dealing of Freeman's connection therewith. It was Freeman's idea to buy Campbell's interest and then incorporate the business, and in pursuance of this idea, which was agreeable to all the parties, Yost, Sewell, and Freeman, on August 6, 1908, applied for a charter for incorporation to be known as the

**742**

Independent Lumber Company, and Freeman made affidavit that he had subscribed his 49 shares of stock and paid in $2,500 in cash on his subscription. [Freeman was mistaken about having paid in any money; he neglected to do this essential thing.] This application was refused, and while things were in this condition Freeman left the state upon August 16th. Sewell had already gone. Yost stayed with the business and ran it for the joint use and benefit of Yost, Freeman, and Sewell, all being justly and equally interested in the business, and thus matters rested until Freeman's return on September 14, 1908. On August 6, 1908, articles of incorporation were prepared for the Independent Lumber Company, capital stock $10,000, of which Freeman subscribed for 49 shares of the par value of $100 each, Sewell 49 shares, and Yost 2 shares. On August 12th, Freeman was advised the application was refused, because the name desired was already in use. Sewell had then left town, and Freeman was going on August 16th, to be gone 30 days, and the matter was allowed to rest until his return. In the meantime the business ran along just as it had, without any special agreement with Yost. Freeman returned September 15th, and went to the lumber yard and after talking with Yost was 'convinced that things were not so rosy as I had supposed.' Freeman then did not want to go any further in the matter, and wanted to wind up the business. His advice was to buy as little as possible, sell for cash, collect up, pay creditors, and they began to seek purchasers for the entire property."

The controlling question in this case is, Whether or not appellant Freeman, under the evidence, became liable for the debts contracted by the Independent Lumber Company? When Freeman bought all of Campbell's interest in and to the property and rights of every kind and connection in said company and firm, it was a going concern. It was solvent and its condition was well known to him. No change whatever in the manner of conducting the business was made after he bought. There were sufficient assets to pay all liabilities owing, which he expected to pay out of the moneys realized from the sale of the property, and debts were paid for a time as they became due, whether contracted before or after he purchased Campbell's interest. He knew at the time he bought Campbell's interest that there existed a copartnership between Campbell, Yost, and Sewell, and that Yost and Sewell consented and were willing for him to take Campbell's place, and the business continued without any change as before. It is true that Freeman intended to incorporate the business under the name of the Independent Lumber Company, and application was made, but was rejected, for the reason that another concern was incorporated under that name.

Freeman knew of the rejection, but no further effort was made to incorporate, and he left on an extended trip, leaving the business to be conducted as before by Yost, manager, in whom he had full confidence.

The appellant contends that there was no agreement, express or implied, between Yost, Sewell, and Freeman to form a copartnership, therefore there could be no copartnership. While there is no evidence showing that there was any agreement between the parties to form a partnership, yet the acquiescence of all the parties, and the manner of conducting the business, forces us to the conclusion that Freeman became liable as a partner, at least to the creditors of the concern. Freeman, by virtue of his interest in the business, was entitled to share in such profits as the concern might make, and he could not hold this position "without bearing its losses and becoming liable for its debts." Miller v. Marx, 65 Tex. 131; Cothran v. Marmaduke & Brown, 60 Tex. 372.

Freeman took the place of Campbell in the business of the Independent Lumber Company. It was a going concern, and its assets were then sufficient to cover its liabilities. Freeman expected to pay all the debts, and had no other thought until the assets had been dissipated. When Campbell sold, he evidently thought that he was relieved of all the burdens of the company, and that the same had been assumed by Freeman. The obligations of the firm had not been changed by the advent of Freeman, and if Freeman did not intend to pay the prior debts of the concern it was but just to its creditors that they be notified to that effect. We think the evidence shows liability of Freeman for all the debts of the concern, whether incurred before or after his purchase of Campbell's interest.

As to the objection of plaintiff in error to the admission of Yost's statement that Freeman was a partner, if error, we think it immaterial, as the case was tried without a jury; and the evidence, aside from its admission, was of sufficient probative force to show the liability of Freeman.

The judgment is affirmed.